United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAREN HEATHERLY, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ILINKHOBBY, INC, et al.,<br><br>    Defendants. | Case No. 13-cv-03190-JSC<br><br>**ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 38, 51 |

Plaintiffs Daren Heatherly and Irma Ramirez sued Defendants Ilinkhobby, Inc., dba New China Restaurant ("Ilinkhobby"), and Peter Kai Chuen Chiu and Rita Shuet Kuen Chiu, as Trustees of the Chiu Family Trust, (the "Chius") for disability discrimination in connection with access barriers they encountered when visiting the New China Restaurant. In response, the Chius, the owners of the property where Plaintiffs experienced the access barriers, filed a third-party complaint against Wilfred Leung, Amy W. Li, Peter Yao Liang and Lai Hung Li (the "Lis"), as well as a cross-claim against Ilinkhobby. Ilinkhobby likewise filed a cross-claim against the Chius.

In December 2014, the parties reached a confidential settlement agreement, which resolved all of Plaintiffs' claims. Defendants, however, continue to dispute liability among themselves, as well as under the settlement agreement. Defendants Ilinkhobby and the Chius have therefore filed the now pending motions to for summary judgment. (Dkt. Nos. 38 & 53.) Having considered the parties' arguments and having had the benefit of oral argument on October 29, 2015, the Court DENIES Ilinkhobby's motion and GRANTS the Chius' motion.[1]

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 4, 8, 26 & 62.)

**BACKGROUND**

**A.     Factual Background**

On December 17, 2003, the Chius entered into a contract to sell their business the New China Restaurant to the Lis. (Dkt. No. 40-1.) According to the bill of sale and notice of bulk sale, the business was sold to Ilinkhobby, Inc., a California Corporation. (Dkt. Nos. 58-2; 58-3.) The same day the parties signed the contract for sale of the New China Restaurant, the Chius and the Lis entered into a contract for the lease of commercial real property located at 2265 Cleveland Avenue in Santa Rosa, California ("the Lease Agreement"), which is the business address for the New China Restaurant. (Dkt. No. 52-1.) The lease commenced on January 1, 2004 and ran for seven years with a five-year option to renew. (*Id*. at 1.[2]) At the expiration of the lease, the renewal option was not exercised, but under the terms of the Lease the tenancy continued on a month-to-month basis after its expiration. (Dkt. Nos. 52 at ¶ 4; 52-1 at 9.) The parties signed an amendment to the Lease in 2011 that addressed the rent and payment of property taxes. (Dkt. Nos. 40-2.)

In October and November 2012, and April 2013, Plaintiffs Daren Heatherly and Irma Ramirez, both of whom use a wheelchair for mobility, visited the New China Restaurant and allegedly encountered numerous access barriers.

**B.     Procedural background**

In July 2013, Plaintiffs filed the underlying Americans with Disabilities Act ("ADA") action against Ilinkhobby dba New China Restaurant and the Chius. (Dkt. No. 1.) In response, Ilinkhobby made claims against the Chius for indemnity and declaratory relief. (Dkt. Nos. 5 & 6.) The Chius then filed claims against the Lis for express and equitable indemnity, and declaratory relief based on the Lease Agreement. (Dkt. No. 19.) The Chius also filed a cross-claim against Ilinkhobby on the same grounds. (Dkt. No. 20.) The Lis answered, but did not counterclaim. (Dkt. No. 23.)

The case was referred to mediation at Plaintiffs' request. (Dkt. No. 29.) On December 16, 2014, the parties reached a settlement on all of Plaintiffs' claims. The settlement agreement is

---

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

between Plaintiffs and Defendants Ilinkhobby and the Chius, who are collectively referred to as the "2265 Cleveland Avenue Parties" ("the Settlement Agreement"). (Dkt. No. 46-1 at 1.) The Agreement provides that "as consideration for the settlement, the 2265 Cleveland Avenue Parties" shall cause "modifications" to ensure compliance with the ADA "pursuant to the 'readily achievable' standard to ensure complying access to the public accommodation known as the New China Restaurant." (*Id*. at 4.) The 2265 Cleveland Avenue Parties agree to "complete the modification to the premises, which shall render the premises accessible." (*Id*.) Defendants included an attachment to the Settlement Agreement which provides that

> Defendants agree that Ilinkhobby, Inc. will pay ▆▆▆▆ toward this settlement. The Chiu Defendants will pay ▆▆▆▆ toward this settlement. Notwithstanding this, or any other provision herein, the Defendants reserve their respective right to pursue any claims against each other arising out of the subject of this suit or the applicable lease, including but not limited to reimbursement for sums paid to Plaintiffs.

(*Id.* at 18.)

### C.     The Pending Summary Judgment Motions

Defendant Ilinkhobby thereafter filed the now pending motion for summary judgment (Dkt. No. 38) seeking a judgment (1) that the Chius continue to violate the ADA by breaching their promise to Plaintiffs in the Settlement Agreement to provide adequate parking for disabled persons; (2) ordering the Chius to provide the agreed-upon van accessible handicap parking; (3) declaring that the Chius are solely responsible for Plaintiffs' discrimination and damages claims under the ADA and the Unruh Civil Rights Act; (4) declaring that the Chius are obligated to bear all costs of barrier removal required by the ADA by explicit written terms of a lease agreement between the Chius and the Lis; and (5) ordering the Chius to reimburse the Lis their one-half contribution of the settlement funds of a confidential amount paid to Plaintiffs in accordance with a written reservation of rights providing for that recovery upon the foregoing judicial determinations of the Chius' responsibilities. The Chius oppose the motion as failing to identify a legal basis for the relief sought. At oral argument, Ilinkhobby clarified that its motion is premised on a theory of express indemnity based on the Lease Agreement and the Settlement Agreement.

The Chius, for their part, seek summary judgment on their first and third causes of action

for express indemnity and declaratory relief.[3]  (Dkt. No. 51.)  The Chius contend that the express terms the Lease makes the Lis responsible for the access barriers at issue here and that the Lis agreed to indemnify the Chius for any liability arising out of the Lis' use and maintenance of the premises.

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a).  The Court must draw "all reasonable inferences [and] resolve all factual conflicts in favor of the non-moving party." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004).  A fact is material if it "might affect the outcome of the suit under the governing law," and an issue is genuine if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  There can be "no genuine issue as to any material fact" when the moving party shows "a complete failure of proof concerning an essential element of the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 324-25.

If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250.  All reasonable inferences must be drawn in the light most favorable to the nonmoving party. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). The non-moving party's evidence must be such that a reasonable trier of fact could return a verdict in their favor, *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995), and the Court "is not required to comb the record to find some reason to deny a motion for summary judgment," *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988).

---

[3] The second cause of action is for implied indemnity.

**EVIDENTIARY OBJECTIONS**

The Chius have raised numerous evidentiary objections in connection with Ilinkhobby's motion for summary judgment. The evidentiary objections are DENIED as moot because the Court has not relied on the evidence they address.

**DISCUSSION**

The Chius and Ilinkhobby both move for summary judgment for express indemnity under the Lease Agreement with each arguing that the other is required to indemnify it for its share of the payments and costs flowing from Defendants' Settlement Agreement with the Plaintiffs. Before considering these dueling claims for relief, the Court considers Ilinkhobby's claim that it is also entitled to indemnity or some other form of relief under the Settlement Agreement.

**A.    Ilinkhobby's Claims Predicated on the Settlement Agreement**

The Settlement Agreement is between the Plaintiffs and Defendants collectively. It does not distinguish between Defendants, and in fact, states that all Defendants are responsible for removing the at-issue access barriers. To the extent that Defendants agreed to remediate certain access barriers and bring the premises into compliance with the ADA, the responsibility to do so falls on all Defendants equally under the Settlement Agreement. (Dkt. No. 46-1 at 4 ("as consideration for the settlement, the 2265 Cleveland Avenue Parties" shall cause "modifications" to ensure compliance with the ADA "pursuant to the 'readily achievable' standard to ensure complying access to the public accommodation known as the New China Restaurant.").) Ilinkhobby has thus failed to establish as a matter of law that it has standing under the Settlement Agreement to seek to compel the Chius to perform certain actions that the Chius and Ilinkhobby promised *Plaintiffs*—not each other—they would undertake. *See Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1022 (2009) (discussing legal framework whereby either the promisee or a third-party beneficiary has standing under a contract). Ilinkhobby has offered no evidence that it is an intended beneficiary under the agreement. *Id.* at 1024 ("the intended beneficiary bears the burden of proving that the promise he seeks to enforce was actually made to him personally or to a class of which he is a member."). It thus has not established a contractual claim predicated on the Settlement Agreement.

Nor has Ilinkhobby established that it has a claim for contractual liability (or other

5

liability) predicated on the ADA. The ADA only protects the rights of *disabled individuals* facing access barriers. *See Chapman v. Pier 1 Imports*, 631 F.3d 939, 946 (9th Cir. 2011) (discussing standing for *disabled* individuals to sue under the ADA); 42 U.S.C. § 12188(a) (creating a private right of action for "any person who is being subjected to discrimination on the basis of disability in violation of [the ADA]"). It does not provide a right of action for places of public accommodation. Further, courts have held that "no implied right[] to indemnity or contribution exist[s] under the Rehabilitation Act or Title II of the ADA." *Indep. Living Ctr. of S. California v. City of Los Angeles, Cal.*, 973 F. Supp. 2d 1139, 1153 (C.D. Cal. 2013) (citing cases).

Ilinkhobby has thus failed to show that the Settlement Agreement entitles it to the relief sought in its summary judgment motion.

### B.   Express Indemnity Under the Lease Agreement

The Court thus turns to the parties' competing claims for express contractual indemnity predicated on the Lease Agreement.

#### 1)   Basis for the Express Indemnity Claims

As both the Lis and the Chius are parties to the Lease Agreement, the basis for the Chius' contractual indemnity claim is clear: the Lease Agreement. The same cannot be said for Ilinkhobby's contractual indemnity claim as it is not a party to the Lease Agreement. Nonetheless, the Chius pled a claim for express indemnity against Ilinkhobby in their cross-claim and alleged that the Lease Agreement was between the Chius and Ilinkhobby. (*Compare* Dkt. No. 52-1 at 1 *with* Dkt. No. 20 ¶¶ 4, 7-11.) Although "[a] party [generally] cannot amend pleadings to directly contradict an earlier assertion made in the same proceeding," *see Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014), this situation does not fall squarely within the principles of judicial estoppel given that the allegations regarding Ilinkhobby appear to be a drafting error rather than a strategic decision, *see New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (noting that one of the "considerations as to whether judicial estoppel applies is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."). Nonetheless, given the Chius' inconsistent position regarding their relationship with Ilinkhobby, and the undisputed evidence that even if Ilinkhobby was not a party to the Lease Agreement, the

Chius were aware—based on the restaurant bill of sale—that the Lis would be operating the restaurant through Ilinkhobby, the Court will consider Ilinkhobby's argument that it has an express indemnity claim against the Chius.

### 2) Construction of the Indemnity Clause

An express indemnity agreement "is construed under the same rules as govern the interpretation of other contracts. Effect is to be given to the parties' mutual intent [], as ascertained from the contract's language if it is clear and explicit." *Crawford v. Weather Shield Mfg. Inc.*, 44 Cal. 4th 541, 552 (2008). "[T]he parties have great freedom to allocate [] responsibilities [under an indemnity agreement] as they see fit." *Id.* at 551. Further, the contract's words are to be understood in their ordinary and popular sense. *Id.* at 552.

The Lease Agreement indemnity clause states:

> **6. INDEMNITY AND LIABILITY INSURANCE.** Lessee, as a material part of the consideration to be rendered to Lessor, hereby waives all claims against Lessor for damages to goods, wares and merchandise, and all other personal property in, upon, or about said premises and for injuries to third persons in or about said premises, from any cause arising at any time, excepting claims arising from Lessor's negligence or willful misconduct, and Lessee will hold Lessor exempt and harmless from any damage or injury to third parties, or to the goods, wares and merchandise and all other personal property of any person, arising from the use of the premises by the Lessee, or from the failure of the Lessee to keep the premises in good condition and repair, as herein provided.

(Dkt. No. 52-1 at 4.) The relevant language provides that the Lessee will hold the Lessor exempt and harmless, i.e., indemnify the Lessor, for any damages or injuries to third parties arising from use of the premises. Ilinkhobby and the Lis advance two arguments as to why this language does not obligate it to reimburse the Chius for the settlement payments to Plaintiffs.

First, Ilinkhobby and the Lis contend that the Lease Agreement shifts all responsibility for ADA barrier removal to the Chius who constructed the restaurant in the first place. In particular, Ilinkhobby and the Lis point to the final two lines of Paragraph 2 regarding Alterations and Additions (marked in italics below):

> **2. ALTERATIONS AND ADDITIONS**. Lessee shall not make, or suffer to be made, any alterations or additions to said premises, or any part thereof, without the written consent of the Lessor first had and obtained by the Lessee; any addition or alteration to the said premises, except movable furniture and trade fixtures, shall become at once a part of the realty and belong to the Lessor. Alterations and

> additions which are not to be deemed as trade fixtures shall include heating, lighting, electrical systems, air conditioning, partitioning, carpeting, or any other installation which has become an integral part of the leased premises. Lessee will at all times permit notices of non- responsibility to be posted and to remain posted until the completion of alterations or additions which have been approved by the Lessor. Contractors, subcontractors, maintenance and/or repair companies, or individuals hired by Lessee to perform work on the leased premises (excluding employees on Lessee's payroll), must be licensed to do such work and must provide certificates of commercial general liability insurance of not less than $1 million per occurrence and $2 million general aggregate limit for bodily injury and property damage prior to the commencement of any such work. Lessor shall be named as a co-insured on said policy. All work shall be performed by Lessee at it's [sic] own cost and expenses and in accordance with the plans and specifications to which Lessor has given it's [sic] prior written approval. *Should any alterations or additions by Lessee to the said premises initiate the County's request that the building be brought up to ADA standards, said construction, repairs, etc. shall be at the expense o/the Lessee. Should any alterations or additions by Lessor [to] the said premises initiate the County to request that the building be brought up to ADA standards, said construction, repairs, etc. shall be at the sole expense o/the Lessor.*

(Dkt. No. 52-1 at 2 (emphasis added).) Ilinkhobby and the Lis insist that because these two sentences are the only reference to the ADA in the Lease Agreement, the parties contemplated that all ADA responsibility would fall on the Chius.

Ilinkhobby and the Lis' interpretation is not supported by the Lease Agreement's plain language. *See Westrec Marina Mgmt., Inc. v. Arrowood Indem. Co*., 163 Cal. App. 4th 1387, 1392 (2008) ("If contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs."). The plain language provides that responsibility for ADA compliance in the limited circumstances where the County requests that the building be brought up to ADA compliance falls on the party who made the alteration or modification which prompted the County's request. Here, however, there has been no such request by the County, nor does the summary judgment record suggest that the access barriers at issue arise from alterations or additions made by either party.

Instead, Paragraph 9 of the Lease Agreement governs the at-issue ADA barriers:

> **9. COMPLIANCE WITH GOVERNMENT REGULATIONS.**
> Lessee shall, at his sole cost and expense, comply with all of the requirements of Municipal, State and Federal authorities now in force, or which may hereafter be in force, pertaining to the said premises, and shall faithfully observe in the use of the premises all Municipal ordinances and State and Federal statutes now in force or

which may hereafter be in force. . . .

(*Id*. at 5.)  This clause explicitly states that the Lessee is responsible for ensuring compliance with the requirements of all county, state, and federal laws.  The ADA is a federal law.  Neither Ilinkhobby nor the Lis even address Paragraph 9 in their briefs.

Ilinkhobby and the Lis' repeated assertion that they bear no responsibility for ADA issues because they did not construct the restaurant rests on a misconception of the ADA's requirements.

> There are three categories of accessibility requirements under Title III of the ADA—the "new construction" provisions, which apply to public accommodations constructed after January 26, 1993; the "alteration" provisions, which apply to post-January 26, 1992 alterations to buildings that existed as of that date; and the "readily achievable" provisions, which apply to unaltered portions of buildings constructed before January 26, 1993.

*Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 847 (N.D. Cal. 2011).  It is undisputed that the premises at issue was constructed in 1982 and has not been altered since its construction.  It is thus the "readily achievable" barrier removal requirement that governs here, *see* 42 U.S.C. § 12182(b)(2)(A)(iv); indeed, this is the only basis on which Plaintiffs brought suit.  (Dkt. No. 1 at ¶¶ 51-57.)  Liability under the ADA for readily achievable removal of access barriers falls on the owners, lessees and operators of places of public accommodation.  *See* 42 U.S.C. § 12182(a) (prohibiting discrimination "by any person who owns, leases (or leases to), or operates a place of public accommodation.").  Thus the Chius as owners, the Lis as lessees, and Ilinkhobby as operator, are liable to Plaintiffs for readily achievable removal of access barriers.

Ilinkhobby and the Lis' reliance on *Paulick v. Ritz-Carlton Hotel Co., LLC*, No. C 10-01115 CRB, 2011 WL 6141015 (N.D. Cal. Dec. 9, 2011), is misplaced.  In *Paulick*, the issue was whether owners, lessees, and operators could be liable under the ADA's "new construction" provisions (42 U.S.C. § 12183(a)(1)) if they did not design or construct the building prior to it being occupied.  Interpreting the plain language of section 12183(a)(1), the district court held they could not be.  *Id.* at *3.  The district court expressly disclaimed any intent to interpret the provision at issue here, namely, the "readily achievable" barrier removal provision.  *Id.* at *2 (stating that only the defendants' liability for "a failure to *design and construct facilities for first occupancy* later than 30 months after July 26, 1990, that are readily accessible to an usable by individuals with disabilities" was at issue on the pending motion) (emphasis in original) (quoting 42 U.S.C. § 12183(a)(1)).  Thus, *Paulick* does not apply to this case.

Ilinkhobby and the Lis' next argue that the indemnity clause does not cover the Chius' settlement with Plaintiffs because Plaintiffs' alleged injuries did not arise from use of the restaurant. Not so. Under the ADA, it is unlawful for "any person who owns, leases, or operates a place of public accommodation" to discriminate against individuals "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). A restaurant whose operations affect commerce qualifies as a "place of public accommodation" subject to the ADA. 42 U.S.C. § 12181(7)(B). As noted above, discrimination under the statute includes failing to remove access barriers when to do so is readily achievable. *See* 42 U.S.C. § 12182(b)(2)(A). Injury and damages that flow from a disabled plaintiff's encounter of access barriers which are prohibited under the ADA arise from the operation of the place of public accommodation; that is, if Ilinkhobby was not operating the restaurant (the place of public accommodation), Plaintiffs would not have encountered the access barriers that led to their lawsuit.

The amounts the Chius paid to settle Plaintiffs' claims thus fall squarely within the scope of the Lease Agreement indemnity provision. The provision provides that "Lessee [the Lis] will hold Lessor [the Chius] exempt and harmless from any damage or injury to third parties . . . arising from the use of the premises by the Lessee." (Dkt. No. 52-1 at 4.) Ilinkhobby and the Lis have not identified any law which suggests that this provision should not be interpreted according to its plain meaning. While parties cannot contract away their liability to ADA plaintiffs for access barriers, they can agree amongst themselves to apportion liability through indemnification agreements. *See Botosan v. Paul McNally Realty*, 216 F.3d 827, 834 (9th Cir. 2000) (noting that while both landlords and tenants remain liable to third parties for access barriers in the leased premises, landlords "can [] seek indemnification from the tenant pursuant to their lease agreement.")

Under the broad language of the indemnity agreement the Lis, as the Lessees, must indemnify the Lessors, the Chius, for injuries arising out of use of the premises as the New China Restaurant. Because it is undisputed that Plaintiffs' claimed injuries arose out of their visits to the New China Restaurant during business hours, the monies owed Plaintiffs fall within the scope of the indemnification agreement.

## CONCLUSION

For the reasons stated above, Ilinkhobby's motion for summary judgment (Dkt. No. 38) is DENIED and the Chius' motion for partial summary judgment on their indemnity and declaratory relief claims (Dkt. No. 51) is GRANTED.

This matter is set for a settlement conference with Magistrate Judge Kim on November 19, 2015.  If the case does not settle, Defendants shall appear for a Case Management Conference on December 10, 2015 at 1:30 p.m. in Courtroom F, 450 Golden Gate Ave., San Francisco, California.  An updated Joint Case Management Conference Statement is due December 3, 2015.

**IT IS SO ORDERED.**

Dated:  November 6, 2015

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge